UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELIOT S. SASH,                                                 :

                Plaintiff,                       :           08 Civ. 8332 (AJP)

         -against-                                :           **OPINION AND ORDER**

THE UNITED STATES OF AMERICA, et al.,          :

              Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

         Pro se plaintiff Eliot S. Sash brings this action pursuant to <u>Bivens</u> v. <u>Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S. Ct. 1999 (1971), alleging that: (1) individual defendants United States Probation Officers Dave Mulcahy and Kevin Mulcahy used excessive force while arresting Sash in violation of his Fourth Amendment rights; and (2) individual defendants Deputy Chief Probation Officer James Blackford and Supervising Probation Officer Peter Merrigan failed to properly train and supervise their subordinates, failed to implement systems that could have prevented the alleged constitutional violation, allowed a policy that violated Sash's rights and "deliberately and maliciously refus[ed] to prevent" the alleged violations of his constitutional rights.  (Dkt. No. 17: 2d Am. Compl. ¶¶ 4-8.)[1]  Sash also asserts a claim against the United States

---

[1]     Although Sash appropriately styles his claims against the individual defendants, all federal agents, as a <u>Bivens</u> action (2d Am. Compl. ¶¶ 7, 32), he also asserts claims against them
                                                          (continued...)

pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq., for the actions of its employees. (2d Am. Compl. ¶ 2.)  Sash seeks monetary damages.  (2d Am. Compl. ¶¶ 2, 9.)

Defendants move for summary judgment as to the Bivens claims, arguing that: (1) supervisory defendants Blackford and Merrigan are not liable because they had no personal involvement in the use of force during Sash's arrest and because there is no Bivens cause of action for supervisory liability; (2) all individual defendants are entitled to summary judgment because the Court need not credit Sash's unsupported allegations which, even if true, do not rise to the level of a constitutional violation.  (Dkt. No. 23: Notice of Motion; Dkt. No. 24: Defs. Br. at 9-18.)

---

1/      (...continued)
pursuant to 42 U.S.C. §§ 1983, 1985 & 1986.  (See Compl. ¶¶ 32-37.)  Section 1983 provides a cause of action against any person:

> [W]ho, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.  The Second Circuit "has long construed the phrase 'under color of state law' as used in . . . civil rights statutes, notably 42 U.S.C. § 1983, to apply only to state actors, not federal officials."  Dotson v. Greisa, 398 F.3d 156, 162 (2d Cir. 2005), cert. denied, 547 U.S. 1191, 126 S. Ct. 2859 (2006).  Thus, Sash cannot assert claims under sections 1983, 1985, or 1986 against the individual defendants since they are federal agents. See, e.g., Arias v. United States, 05 Civ. 10497, 2007 WL 4157152 at *16 (S.D.N.Y. Nov. 15, 2007) (dismissing § 1983 claims against officials from the Department of Homeland Security because they are federal officials).  The Court construes all of Sash's claims against the individual defendants as Bivens claims.  See, e.g., Taverez v. Reno, 54 F.3d 109, 109-10 (2d Cir. 1995) (approving district court's recasting of a § 1983 claim brought by pro se inmate against federal officers as Bivens claim); Bender v. General Services Administration, 539 F. Supp. 2d 702, 707 n.4 (S.D.N.Y 2008) (Lynch, D.J.) (construing pro se plaintiff's § 1983 claim against federal security contractors as a Bivens claim).

The parties have consented to disposition of this case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 10: § 636(c) Consent Form; see also Dkt. No. 11: 3/19/09 Hearing Tr. at 16-17.)

For the reasons set forth below, defendants' summary judgment motion (Dkt. No. 23) is GRANTED as to defendants Blackford and Merrigan, and DENIED as to defendants Dave Mulcahy and Kevin Mulcahy.  Trial is scheduled to begin January 6, 2010 at 9:00 a.m.

## FACTS

### Background

On September 30, 2003, Sash  pled guilty in the United States District Court for the Southern District of New York to charges that he produced and sold counterfeit law enforcement badges.  See United States v. Sash, 396 F.3d 515, 518 (2d Cir. 2005).[2]  Sash was sentenced to twenty-seven months imprisonment and two years and nine months of supervised release.  United States v. Sash, 396 F.3d at 520, 525.  (See Bober Aff. Ex. D: United States v. Sash, 02 Cr. 1519, 8/17/05 Amended Judgment.)  In addition to the standard conditions of supervised release, the sentencing court imposed the following special condition:

> The [defendant] shall not possess any law-enforcement equipment, such as New York Police Department shields and badges, that he is not authorized to possess. Nor shall he possess any raw materials, inventory, or badge components that could be used to manufacture law-enforcement equipment that he is not authorized to manufacture.

(8/17/05 Amended Judgment at p. 4.)

---

[2]      See also Dkt. No. 25: Bober Aff. Exs. A & C: 6/23/03 & 9/30/03 Sash Plea Allocutions.

Upon release from prison, Sash was placed under the supervision of United States Probation Officer Janice Fink.  (Dkt. No 26: Blackford Aff. ¶ 3.)  In early March 2006, during an unannounced visit to Sash's New Jersey home, Officer Fink observed items that appeared to be prohibited by the special conditions of Sash's supervised release.  (Blackford Aff. ¶ 5.)  On March 6, 2006, probation officers, including defendant James Blackford, searched Sash's home and found "a large number of prohibited law-enforcement-related items," including police uniforms and law enforcement badges.  (Blackford Aff. ¶ 6.)  Sash was not at home at the time of the search.  (Bober Aff. Ex. F: Garland-Sash Dep. at 16, 20; Blackford Aff. ¶ 7; Dkt. No. 17: 2d Am. Compl. ¶ 19.)

Later that morning, after returning to his Manhattan office, Blackford telephoned Sash.  (See Bober Aff. Ex. B: Sash Dep. at 35-37, 43; Blackford Aff. ¶ 8; 2d Am. Compl. ¶¶ 20-21.)  Sash was in lower Manhattan, not far from the Probation Department office, working as an actor on a movie set.  (Garland-Sash Dep. at 20; 2d Am. Compl. ¶ 19 & n.1.)  Sash agreed to report to the Probation Department office after completing his work for the day.  (Sash Dep. at 37; Bober Aff. Ex. E: Blackford Dep. at 64; Blackford Aff. ¶ 8.)  Sash spoke with Blackford twice more that afternoon, at 1:10 p.m. and 1:25 p.m., reiterating that he would report to the Probation Department office when he was finished work.  (Sash Dep. at 35-37.)  After more time had passed and Sash still had not reported, Blackford consulted with defendant Peter Merrigan (see Bober Aff. Ex. G: Merrigan Dep. at 38) and decided that Sash should be arrested due to a concern that he would not surrender voluntarily.  (Blackford Aff. ¶ 10.)  Officer Timothy Murphy and defendants Merrigan, Dave Mulcahy and Kevin Mulcahy were dispatched to the movie set to arrest Sash.  (Blackford Aff. ¶ 10.)

**Sash's Arrest**

Sash was arrested at the corner of Front and Beekman Streets in lower Manhattan. (Dkt. No. 25: Bober Aff. Ex. B: Sash Dep. at 51.)  Sash and another actor, Shawn Alexander, were walking towards the "holding area" where he would sign his daily work voucher.  (Sash Dep. at 52; Bober Aff. Ex. H: Alexander Dep. at 43; Dkt. No. 17: 2d Am. Compl. ¶ 22.)  As Sash approached the corner, a car came "screeching up" and three men jumped out.  (Sash Dep. at 51.)  According to Sash, the three men, later identified as Probation Officers Murphy, Dave Mulcahy and Kevin Mulcahy,[3] did not identify themselves as law enforcement officers, nor were they wearing any identification. (Sash Dep. at 51-53.)  In contrast, Dave Mulcahy and Kevin Mulcahy testified that when they approached Sash, they did identify themselves.  (Bober Aff. Ex. I: Dave Mulcahy Dep. at 16; Bober Aff. Ex. J: Kevin Mulcahy Dep. at 8.)  According to Sash, Dave and Kevin Mulcahy rushed up to Sash and tackled him to the ground.  (Sash Dep. at 51-52; 2d Am. Compl. ¶ 23.)[4]  Sash admits that he was held on the ground for five seconds "at the most." (Sash Dep. at 55.)  According to Sash, the Mulcahys picked Sash up and threw him against a metal gate.  (Sash Dep. at 53, 55,

---

[3]     Defendant Peter Merrigan was also present at Sash's arrest, but Sash did not recall his being there.  (Sash Dep. at 57.)

[4]     According to Officer Timothy Murphy, as well as defendants Dave Mulcahy, Kevin Mulcahy and Peter Merrigan, Sash was cooperative throughout the arrest and no force was used, tackling or otherwise.  (Bober Aff. Ex. K: Murphy Dep. at 16-17; Merrigan Dep. at 54; Dave Mulcahy Dep. at 16-17; Kevin Mulcahy Dep. at 8.)  Shawn Alexander does not recall seeing Sash tackled.  (See Alexander Dep. at 62-63; Bober Aff. Ex. L: Alexander Report at 3.)

58.)[5/]  Sash demanded:  "'[W]ho are you and what do you want?'"  (2d Am. Compl. ¶ 23; see Sash Dep. at 55.)  According to Sash, he was told that they were probation officers and that they "had to make sure [they] got [him]."  (2d Am. Compl. ¶ 23.)  Sash was handcuffed, his pockets were emptied, and he was placed in the backseat of the officers' car.  (2d Am. Compl. ¶ 24; Sash Dep. at 55.)  Sash admits that the entire encounter lasted "30 seconds at the most."  (Sash Dep. at  55.)

According to Sash, in the car he felt pain in his back and neck.  (Sash Dep. at 55-56.)  Officer Murphy loosened Sash's  handcuffs to "take the pressure off."  (Sash Dep. at 58.)  According to Sash, he asked defendant Dave Mulcahy:  "'Why did you have to tackle me?  I told Blackford I was coming in,'" and Mulcahy responded:  "'We had orders that we had to get you.'"  (Sash Dep. at 59.)

Sash was taken to the federal courthouse at 500 Pearl Street to be arraigned for violation of his supervised release.  (Sash Dep. at 57; 2d Am. Compl. ¶ 25.)  At the courthouse, Sash began to have chest pains.  (Sash Dep. at 70-71; 2d Am. Compl. ¶ 25.)  Sash took a nitroclycerine pill, but the United States Marshals noted that he looked ill and refused to take custody of him until he was cleared by a medical professional.  (Sash Dep. 71-74; 2d Am. Compl. ¶¶ 26-27.)  Sash was taken to NYU Downtown Hospital and admitted overnight.  (See Bober Aff. Ex. M: NYU Downtown Hosp. Med. Records; 2d Am. Compl. ¶ 27.)  He was released the next morning (March 7,

---

[5/]     According to Shawn Alexander, the officers "took Mr. Sash to the side" and placed Sash up against a truck.  (Alexander Dep. at 44-45; Bober Aff. Ex. L: Alexander Report at 3.)  According to Dave and Kevin Mulcahy, Sash was directed to put his hands on a metal door.  (Dave Mulcahy Dep. at 17; Kevin Mulcahy Dep. at 8.)  Peter Merrigan denies that Sash was thrown up against a metal door.  (Merrigan Dep. at 54.)

2006), transported back to the courthouse, and arraigned for violation of his supervised release. (See 2d Am. Compl. ¶ 29.)

On April 4, 2006, Judge Casey held a supervised release revocation hearing. United States v. Sash, 444 F. Supp. 2d 224, 225 (S.D.N.Y. 2006). On August 2, 2006, Judge Casey concluded that there was "overwhelming evidence" that Sash had violated his supervised release. Id. at 228.

## ANALYSIS

## I.   GOVERNING LEGAL STANDARDS

### A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

   To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e);  accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

   In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[6] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source

---

[6]  See also, e.g., Feingold v. N.Y., 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." <u>Chambers</u> v. <u>TRM Copy Ctrs. Corp.</u>, 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. <u>See, e.g.</u>, <u>Donahue</u> v. <u>Windsor Locks Bd. of Fire Comm'rs</u>, 834 F.2d 54, 58 (2d Cir. 1987); <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986), <u>cert. denied</u>, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. <u>See, e.g.</u>, <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted." <u>Id.</u> at 248, 106 S. Ct. at 2510 (citations omitted); <u>see also, e.g.</u>, <u>Knight</u> v. <u>U.S. Fire Ins. Co.</u>, 804 F.2d at 11-12.

"The Court recognizes that it must 'must extend extra consideration' to pro se plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions." <u>Salahuddin</u> v. <u>Coughlin</u>, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Peck, M.J.) (citations & internal quotations omitted); <u>see, e.g.</u>, <u>McPherson</u> v. <u>Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest'").[7] "Nevertheless, proceeding pro se does not otherwise relieve a litigant from the usual

---

[7]    <u>See also</u>, <u>e.g.</u>, <u>Ferran</u> v. <u>Town of Nassau</u>, 471 F.3d 363, 369 (2d Cir. 2006); <u>Fuller</u> v. <u>Armstrong</u>, 204 Fed. Appx. 987, 988 (2d Cir. 2006), <u>cert. denied</u>, 128 S. Ct. 209 (2007); (continued...)

requirements of summary judgment, and a pro se party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  Cole v. Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[8/]

## B.    Federal Claims Brought Pursuant To Bivens v. Six Unknown Agents

Under Bivens and its progeny, federal courts can hear suits for money damages against federal government officials accused of violating constitutional rights.  Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 396-97, 91 S. Ct. 1999, 2004-05 (1971); see also, e.g., Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 66, 122 S. Ct. 515, 519 (2001) ("In Bivens . . . we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."); Schweiker v. Chilicky 487 U.S. 412, 421, 108 S. Ct. 2460, 2466 (1988) ("In [Bivens], this Court held that the victim of a Fourth Amendment violation by federal officers acting under color of their authority may bring suit

---

[7/]    (...continued)
Gildor v. U.S. Postal Serv., 179 Fed. Appx. 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. N.Y., 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 Fed. Appx. 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[8/]    See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 Fed. Appx. 740 (2d Cir. 2002).

for money damages against the officers in federal court."); Carlson v. Green, 446 U.S. 14, 18-19, 100 S. Ct. 1468, 1471 (1980) ("Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").  As Justice Harlan wrote in his oft-cited concurrence in Bivens:  "[F]ederal courts do have the power to award damages for violation of 'constitutionally protected interests' and I agree with the Court that a traditional judicial remedy such as damages is appropriate to the vindication of the personal interests protected by the Fourth Amendment." Bivens, 403 U.S. at 399, 91 S. Ct. at 2006 (Harlan, J. concurring); see also Erwin Chemerinsky, Federal Jurisdiction § 9.1.2 (5th ed. 2007).[9/]

---

[9/]     The Supreme Court subsequently expanded the Bivens doctrine to provide money damages for infringements of other constitutional rights by federal officers.  See, e.g., Wilkie v. Robins, 551 U.S. 537, 549-50, 127 S. Ct. 2588, 2597-98 (2007); Farmer v. Brennan, 511 U.S. 825, 828-34, 114 S. Ct. 1970, 1974-78 (1994); Schweiker v. Chilicky, 487 U.S. at 421, 108 S. Ct. at 2466-67 (summarizing causes of action recognized under Bivens); Davis v Passman, 442 U.S. 228, 243-45, 99 S. Ct. 2264, 2276-77 (1979); see also, e.g., Erwin Chemerinsky, Federal Jurisdiction § 9.1.2 at 611 ("[I]n subsequent decisions the [Supreme] Court recognized the existence of causes of action for infringements of the Fifth, Eighth and First Amendments.  Lower federal courts have recognized Bivens suits for violations of the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments.") (fns. citing cases omitted); Arar v. Ashcroft, 585 F.3d 559, 571-72 (2d Cir. 2009) (The Supreme Court has limited the availability of Bivens claims to Fourth Amendment violations, employment discrimination claims in violation of the Due Process Clause, and Eighth Amendment violations by prison officials.); Dotson v. Griesa, 398 F.3d 156, 165-66 (2d Cir. 2005) (recognizing the availability of Bivens claims in the context of Fourth, Fifth, and Eighth Amendment violations); Schweitzer v. Dep't of Veterans Affairs, 23 Fed. Appx. 57, 59 (2d Cir. 2001) ("'Bivens actions' for damages against federal officers [are] permitted for violations of the Due Process Clause of the Fifth Amendment."), cert. denied, 535 U.S. 955, 122 S. Ct. 1359 (2002); Tellier v. Fields, 230 F.3d 502, 508 (2d Cir. 2000) (Bivens claim based on violations of procedural due process rights under the Due Process Clause of the Fifth Amendment); (continued...)

"'Bivens actions are not significantly dissimilar to claims brought under [42 U.S.C.] §§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted and the defenses which may be asserted.'" Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987). "Because the two actions share the same 'practicalities of litigation,' federal courts have typically incorporated § 1983 law into Bivens actions." Tavarez v. Reno. 54 F.3d 109, 110 (2d Cir. 1995) (citation omitted).[10/]

### C.   Excessive Force Claims

In Graham v. Connor, the Supreme Court held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."

---

[9/]   (...continued)
Noguera v. Hasty, 99 Civ. 8786, 2000 WL 1011563 at *8-9 (S.D.N.Y. July 21, 2000) (Peck, M.J.), report & rec. adopted in part, 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001) (Wood, D.J.).

[10/]   See, e.g., Butz v. Economou, 438 U.S. 478, 504, 98 S. Ct. 2894, 2909 (1978) (no "distinction for purposes of immunity law" between Bivens and § 1983 claims); Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647, 653 (2d Cir.1998) (same statute of limitation applies to Bivens and § 1983 claims); Chin v. Bowen, 833 F.2d at 24 ("[T]here is a 'general trend in the appellate courts to incorporate § 1983 law into Bivens suits.'"); Ellis v. Blum, 643 F.2d 68, 83-84 (2d Cir. 1981) (same rule of damages applies to Bivens and § 1983 claims); Garcia v. Watts, 08 Civ. 7778, 2009 WL 2777085 at *12 n.14 (S.D.N.Y. Sept. 1, 2009) ("'Bivens claims are treated as analogous to claims under 42 U.S.C. § 1983 and incorporate the same law.'"); DeMartino v. Zenk, No. 04-CV-3880, 2009 WL 2611308 at *8 n.5 (E.D.N.Y. Aug. 25, 2009); Alcantara v. City of N.Y., 646 F. Supp. 2d 449,456-57 (S.D.N.Y. 2009); Connors v. Heywright, 02 Civ. 9988, 2003 WL 21087886 at *2 n.1 (May 12, 2003) (Chin, D.J.) ("In general, case law under § 1983 applies to Bivens cases.").

490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989).[11/]  "Determining whether the force used during an arrest is 'reasonable' requires balancing the 'nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995) (quoting Graham v. Connor, 490 U.S. at 396, 109 S.Ct. at 1872).[12/]

In recognizing that some degree of force is necessary when effectuating an arrest, the Supreme Court  has held that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment."  Graham v. Connor, 490 U.S. at 396, 109 S. Ct. at 1872 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), cert. denied, 414 U.S. 1033, 94 S. Ct. 462 (1973)); accord, e.g., Lennon v. Miller, 66 F.3d at 425; see, e.g., Jones v. Parmley,  465 F.3d 46, 61 (2d Cir. 2006) ("We are, of course, mindful that the reasonableness inquiry does not allow us to substitute our own viewpoint; we must judge the officer's actions 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'"); Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.1993) (A "de minimis use of force

---

[11/]    Accord, e.g., County of Sacramento v. Lewis, 523 U.S. 833, 842-43, 118 S. Ct. 1708, 1714-15 (1998); Russo v. City of Bridgeport, 479 F.3d 196, 208-09 (2d Cir.), cert. denied, 552 U.S. 818, 128 S. Ct. 109 (2007); Bryant v. City of N.Y., 404 F.3d 128, 135-36 (2d Cir. 2005).

[12/]    See also, e.g., Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000);  Bennet v. Falcone, 05 Civ. 1358, 2009 WL 816830 at *4-5 (S.D.N.Y. Mar. 25, 2009) ; Richardson v. N.Y.C. Health & Hosp. Corp., 05 Civ. 6278, 2009 WL 804096 at *10 (S.D.N.Y. Mar. 25, 2009); Greenfield v. City of N.Y., 99 Civ. 2330, 2000 WL 124992 at *7 (S.D.N.Y. Feb. 3, 2000) (Peck, M.J.) (citing cases).

will rarely suffice to state a constitutional claim.").   Instead, the standard evaluates the "reasonableness of the force used by considering the totality of the circumstances faced by the officer on the scene." Lennon v. Miller, 66 F.3d at 425 (citing Graham v. Connor, 490 U.S. at 396, 109 S. Ct. at 1872).

## II.   DEFENDANTS' SUMMARY JUDGMENT MOTION AS TO DEFENDANTS DAVE AND KEVIN MULCAHY IS DENIED

### A.   Tackling is Not "De Minimus" Force in This Case

Defendants contend that even if all of Sash's allegations are true, he fails to state a constitutional claim because "[d]e minimus applications of force during an arrest, such as those described by Sash, do not implicate the Constitution."  (Dkt. No. 24: Defs. Br. at 17, citing Richardson v. N.Y.C. Health & Hosp. Corp., 05 Civ. 6728, 2009 WL 804096 at *14 (S.D.N.Y. Mar. 25, 2009).)

The Court does not agree that Sash's allegations, if true, do not rise to the level of a constitutional violation.  Viewed in the light most favorable to Sash, the evidence shows that Sash was tackled and thrown up against a metal gate, after he had made arrangements with the Probation Department to voluntarily surrender.  (See pages 4-5 above.)  Tackling an arrestee on the street and forcibly shoving him into a metal gate when he offers no resistence certainly could be actionable conduct (although Sash's damages may be minimal).  See, e.g., Mills v. Fenger, 216 Fed. Appx. 7, 8-9 (2d Cir. 2006) (denying summary judgment on excessive force claim where plaintiff alleged that officer "'grabbed [him] and threw [him] down'"); Robison v. Via, 821 F.2d 913, 923-25 (2d Cir. 1987) (reversing grant of summary judgment for the defense on excessive force claim that defendant

"'pushed' [plaintiff] against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back.'"); Williams v. City of N.Y., No. 06 CV 6601, 2009 WL 3254465 at *1-2, 7-8 (E.D.N.Y. Oct. 9, 2009) (denying summary judgment on excessive force claim where plaintiff alleged officers "rushed and tackled him" even though he did not struggle or resist); Li v. Aponte, 05 Civ. 6237, 2008 WL 4308127 at *6 (S.D.N.Y. Sept. 16, 2008) (denying summary judgment of excessive force claim where plaintiff alleged that officer repeatedly pushed her up against a column); Lupinacci v. Pizighelli, 588 F. Supp. 2d 242, 250 (D. Conn. 2008) (denying summary judgment on excessive force claim where officer allegedly tackled plaintiff where plaintiff did not resist arrest and where officer did not first ask him to voluntarily submit to an arrest). Viewing the totality of circumstances, if the jury credits Sash's description of the arrest, it is difficult to see how the defendants' decision to use such aggressive tactics was objectively reasonable; instead, the facts put forth by Sash indicate that some degree of force less than that allegedly used would have been appropriate under the circumstances.

### B.   The Extent of Injury is Not Dispositive

Defendants also urge the Court to dismiss the claim due to the short duration of the incident and the lack of physical evidence, such as scraping or bruising, typically associated with the application of force. (Dkt. No. 24: Defs. Br. at 16.) However, while "the extent of the injury suffered . . . is one factor to be considered when determining whether the use of force was excessive, an injury need not be serious in order to give rise to a constitutional claim." Ortiz v. Pearson, 88 F. Supp. 2d 151, 160 (S.D.N.Y. 2000). Just as reasonable force is not unconstitutional even if it causes

serious injury, neither does unreasonable force become immunized from challenge because it causes only minor injury. See, e.g., Robison v. Via, 821 F.2d at 924 ("While [plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, the failure is not fatal to her claim.  If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."); Zhao v. City of N.Y., 07 Civ. 3636, — F. Supp. 2d —, 2009 WL 3047253 at *13-14 (S.D.N.Y. Sept. 23, 2009) (The injury sustained need not be serious to support an excessive force claim where force used was shown to be unreasonable; suggesting that there is no reason that "the use of completely unjustified force by the police that does not result in physical harm could not yield a constitutional claim for which the appropriate relief would be nominal damages."); Espada v. Schneider, 522 F. Supp. 2d 544, 555-56 & n.12 (S.D.N.Y. 2007) (Plaintiff might obtain nominal damages if there was no "objective justification" for officer's use of excessive force "[r]egardless of the limited extent of the injuries plaintiff suffered.").

Moreover, even if there were some threshhold of injury necessary, Sash has met it, at least sufficiently for nominal damages.  Sash insists that the incident caused pain in his neck and back.  (See page 6 above.)  He reported tightening in his chest one hour after the arrest.  (See page 6 above.)  According to Sash, the United States Marshals at the courthouse noted that Sash did not look well (see page 6 above), and Sash was treated for chest pain at NYU Downtown Hospital shortly after his arrest.  (See page 6 above.)  Although Sash's immediate injuries turned out to be minor, the Court cannot find them de minimus as a matter of law.  See, e.g., Griffin v. Crippen, 193

F.3d 89, 90-92 (2d Cir.1999) (reversing dismissal of excessive force claim where the only evidence of injury plaintiff intended to offer was his own testimony of a bruised shin and swelling over his left knee); Robison v. Via, 821 F.2d at 924 (plaintiff who alleged only bruises lasting a "couple weeks," and who had never sought medical attention for those injuries, was entitled to submit excessive force claim to jury); see also, e.g., Maxwell v. City of N.Y., 380 F.3d 106, 108-09 (2d Cir. 2004) (reversing district court's dismissal of excessive force claim alleging that defendant shoved her head into the police car, where plaintiff alleged shoulder pain, a scrape to her forehead, and was diagnosed with post-concussive syndrome); Gomez v. City of N.Y., 05 Civ. 2147, 2007 WL 5210469 at *7 (S.D.N.Y. May 28, 2008) (Denying summary judgment where plaintiff suffered multiple abrasions and bruises that lasted approximately one week; "though the plaintiff's alleged injuries may not have been severe, they were not so superficial as to warrant dismissal as a matter of law."), report & rec. adopted, 2008 WL 3833811 (S.D.N.Y. Aug. 14, 2008); Pierre-Antoine v. City of N.Y., 04 Civ. 6987, 2006 WL 1292076 at *3 (S.D.N.Y. May 9, 2006) (Lynch, D.J.) (declining to dismiss excessive force claim although "the medical evidence [made] it less likely that [plaintiff] can prevail at trial, particularly because it does not reveal any severe injury. . . . It is for the fact-finder to weigh all of this evidence against [plaintiff's] sworn testimony, and to assess whether and to what extent the medical evidence strips that testimony of its credibility.").

### C.     Sash's Uncorroborated Testimony is Sufficient to Raise Issues of Fact

Finally, defendants urge the Court to not credit Sash's assertion that he was tackled because there is no evidence, except for Sash's testimony, to support his allegations.  (Dkt. No. 24:

Defs. Br. at 14.)  Defendants argue that "'[w]hen opposing parties tell two different stories, one if which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'" (Defs. Br. at 14, quoting  Scott v.  Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).)

However, "[i]t is a settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'" McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (quoting Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997)); see also cases cited at page 9 above.

The Court does not find Sash's version of events to be so incredible, or in such discord with other evidence, as to find his allegations "wholly fanciful."  Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party 'must offer some hard evidence that its version of the events is not wholly fanciful.'"); see, e.g., Bennet v. Falcone 05 Civ. 1358, 2009 WL 816830 at *3-5 (S.D.N.Y. Mar. 25, 2009) ("Though Plaintiff's evidence is paper-thin – it consists primarily of his own testimony and [a witness'] account that [plaintiff] screamed out in pain – it is nevertheless sufficient to indicate the existence of a disputed material fact as to whether or not [the arresting officer] applied excessive force in effectuating Plaintiff's arrest." ); Moore v. Casselberry, 584 F. Supp. 2d 580, 583-85 (W.D.N.Y. 2008) ("[J]ust because the plaintiff's claim is based solely upon his own contradictory and incomplete testimony, that does not automatically entitle the defendants to summary judgment.  The evidence must be such that no reasonable juror could believe it."); Musso v. City of N.Y., No. 05 CV 2511, 2008 WL

3200208 at *1, 6 (E.D.N.Y. July 24, 2008) (denying summary judgment motion where plaintiff alleged that defendant officer punched her, drop-kicked her, and "rushed forward, flew in the air toward [her], kicked her with both feet, and landed on top of her" where officer denied this conduct and there was an eight minute video-tape of part of the encounter that depicted no such conduct). Sash consistently has asserted that he was tackled and thrown up against a metal gate while being arrested.  (See page 5 above.)  Although defendants contend that Sash was not tackled and that he was simply instructed to put his hands up against a metal wall (see page 6 n.5 above), on a summary judgment motion their testimony is not afforded greater weight than Sash's.  While it is true that the neutral witness, Shawn Alexander, does not recall Sash being tackled (see page 5 n.4 above), his version of events is not entirely divergent from Sash's:  both agree on the approximate time and location of the arrest, both agree as to the suddenness of the officers' approach, and both agree that multiple officers placed Sash up against a metal wall (see pages 5-6 above).  While Sash's Bivens claim relies almost entirely on his own testimony, one need not "suspend disbelief" in order to credit his allegations. Compare Jeffreys v. City of N.Y., 426 F.3d at 555.  Nor is it outside the realm of the possible that arresting officers would use force but deny having done so.

At the summary judgment stage, Sash's testimony concerning events to which he has personal knowledge constitutes sufficiently credible evidence such that there exists genuine issues of material fact to be decided at trial.  Defendants' motion for summary judgment on the Bivens excessive force claim for Officers Dave and Kevin Mulcahy is DENIED.

### III.   DEFENDANTS' SUMMARY JUDGMENT MOTION IS GRANTED WITH RESPECT TO SASH'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANTS BLACKFORD AND MERRIGAN

#### A.   Personal Involvment

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord, e.g., Warheit v. City of N.Y., 271 Fed. Appx 123, 126 (2d Cir. 2008); Dyno v. Village of Johnson City, 240 Fed. Appx. 432, 434 (2d Cir. 2007), cert. denied, 128 S. Ct. 1874 (2008); Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006); Gill v. Tuttle, 93 Fed. Appx. 301, 302 (2d Cir. 2004); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003), cert. denied, 543 U.S. 1093, 125 S. Ct. 971 (2005).[13]

Similar to a suit brought under 42 U.S.C. § 1983, a Bivens action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation.  See, e.g., Ashcroft v. Iqbal, — U.S. —, 129 S. Ct. 1937, 1948 (2009)

---

[13]   See, e.g., Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Allan v. Woods, No. 05-CV-1280, 2008 WL 724240 at *5 (N.D.N.Y. Mar. 17, 2008) ("Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability."); Tafari v. Annets, 06 civ. 11360, 2008 WL 2413995 at *10 (S.D.N.Y. June 12, 2008) (Peck, M.J.), report & rec. adopted, 2008 WL 4449372 (S.D.N.Y. Oct. 2, 2008); Zamakshari v. Dvoskin, 899 F. Supp. 1097, 1109 (S.D.N.Y. 1995) (Sotomayor, D.J. & Peck, M.J.) ("In order to maintain a cause of action [under § 1983] against any official, a plaintiff must show that the defendant was personally involved in the alleged deprivation of his constitutional rights, since the doctrine of respondeat superior does not apply to § 1983 actions.").

("Because vicarious liability is inapplicable to <u>Bivens</u> and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); <u>Thomas</u> v. <u>Ashcroft</u>, 470 F.3d 491, 496 (2d Cir. 2006) ("[I]n <u>Bivens</u> actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."); <u>Barbera</u> v. <u>Smith</u>, 836 F.2d 96, 99 (2d Cir. 1987), <u>cert. denied</u>, 489 U.S. 1065, 109 S. Ct. 1338 (1989); <u>Garcia</u> v. <u>Watts</u>, 08 Civ. 7778, 2009 WL 2777085 at *12 (S.D.N.Y. Sept. 1, 2009); <u>Alcantara</u> v. <u>City of N.Y.</u>, 646 F. Supp. 2d 449, 456-57 (S.D.N.Y. 2009); <u>Parker</u> v. <u>United States</u>, 05 Civ. 5324, 2006 WL 3378684 at *4 (S.D.N.Y. Nov. 15, 2006); <u>Noguera</u> v. <u>Hasty</u>, 99 Civ. 8786, 2000 WL 1011563 at *16 (S.D.N.Y. July 21, 2000) (Peck, M.J.), <u>report & rec. adopted in part</u>, 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001); <u>Mallard</u> v. <u>Menifee</u>, 99 Civ. 0923, 2000 WL 557262 at *3 (S.D.N.Y. May 8, 2000) ("[T]o establish a <u>Bivens</u> claim, plaintiff must allege facts showing that the individual defendant personally participated in the alleged Constitutional violation . . . . Supervisors are not liable under <u>Bivens</u> based solely on the alleged misconduct of their subordinates.") (citing cases).[14]

It is not enough to show that a defendant "ultimately supervised those who allegedly violated plaintiff's Constitutional rights." <u>Mallard</u> v. <u>Menifee</u>, 2000 WL 557262 at *3 (citing <u>Shannon</u> v. <u>U.S. Parole Comm'n</u>, 97 Civ. 6420, 1998 WL 557584 at *2 (S.D.N.Y. Sept. 2, 1998)).

---

[14]    <u>See</u>, <u>e.g.</u>, <u>Petrazzoulo</u> v. <u>U.S. Marshals Srv.</u>, 999 F. Supp. 401, 409 (W.D.N.Y. 1998) ("It is well-settled that a [federal] defendant's personal involvement in the alleged constitutional violation is a prerequisite to an award of money damages."); <u>Krebs</u> v. <u>Tutelian</u>, 97 Civ. 0554, 1998 WL 108003 at *5 (S.D.N.Y. Mar. 12, 1998).

Respondeat superior does not apply in <u>Bivens</u> actions.  <u>E.g.</u>, <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. at 1948;

<u>Thomas</u> v. <u>Ashcroft</u>, 470 F.3d at 496; <u>Ellis</u> v. <u>Blum</u>, 643 F.2d 68, 85 (2d Cir. 1981); <u>Garcia</u> v. <u>Watts</u>,

2009 WL 2777085 at *12; <u>Vasquez</u> v. <u>Parks</u>, 02 Civ. 1735, 2003 WL 1442087 at *8 (S.D.N.Y. Feb.

4, 2003); <u>Noguera</u> v. <u>Hasty</u>, 2000 WL 1011563 at *16; <u>Querim</u> v. <u>E.E.O.C.</u>, 111 F. Supp. 2d 259,

271 (S.D.N.Y. 2000), <u>aff'd</u> 9 Fed. Appx. 35 (2d Cir. 2001).

   In 1995, the Second Circuit held that "[t]he personal involvement of a supervisory

defendant may be shown by evidence that:  (1) the defendant participated directly in the alleged

constitutional violation, (2) the defendant, after being informed of the violation through a report or

appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which

unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the

defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or

(5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on

information indicating that unconstitutional acts were occurring."  <u>Colon</u> v. <u>Coughlin</u>, 58 F.3d at

873.[15/]  However, in 2009, the Supreme Court held that:

> In a § 1983 suit or a <u>Bivens</u> action - where masters do not answer for the torts of their
> servants - the term "supervisory liability" is a misnomer.  Absent vicarious liability,
> each Government official, his or her title not withstanding, is only liable for his or
> her own misconduct.  In the context of determining whether there is a violation of

---

[15/] <u>Accord</u>, <u>e.g.</u>, <u>Ziemba</u> v. <u>Clark</u>, 167 Fed. Appx. 831, 833 (2d Cir. 2006); <u>Samuels</u> v. <u>Selsky</u>,
166 Fed. Appx. 552, 556 (2d Cir. 2006); <u>Patterson</u> v. <u>County of Oneida</u>, 375 F.3d 206, 229
(2d Cir. 2004); <u>Back</u> v. <u>Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d at 127; <u>Hayut</u>
v. <u>State Univ. of N.Y.</u>, 352 F.3d 733, 753 (2d Cir. 2003); <u>Hernandez</u> v. <u>Keane</u>, 341 F.3d at
145; <u>Wright</u> v. <u>Smith</u>, 21 F.3d at 501; <u>see also</u>, <u>e.g.</u>, <u>Poe</u> v. <u>Leonard</u>, 282 F.3d 123, 140 (2d
Cir. 2002).

> clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose <u>Bivens</u> liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendant responsibilities.

<u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. at 1949.  Although the Second Circuit has not weighed in on what remains of <u>Colon</u> after <u>Iqbal</u>, several decisions in this district have concluded that by specifically rejecting the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. at 1949, <u>Iqbal</u> effectively nullified several of the classifications of supervisory liability enunciated by the Second Circuit in <u>Colon</u> v. <u>Coughlin</u>.  <u>See</u>, <u>e.g.</u>, <u>Belamy</u> v. <u>Mount Vernon Hosp.</u>, 07 Civ. 1801, 2009 WL 1835939 at *4, 6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third <u>Colon</u> categories pass <u>Iqbal</u>'s muster – a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred.  The other <u>Colon</u> categories impose the exact types of supervisory liability that <u>Iqbal</u> eliminated – situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."); <u>accord</u>, <u>e.g.</u>, <u>Joseph</u> v. <u>Fischer</u>, 08 Civ. 2824, 2009 WL 3321011 at *14 (S.D.N.Y. Oct. 8, 2009) ("[U]nder <u>Iqbal</u>, . . . . [a] defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right."); <u>Newton</u> v. <u>City of N.Y.</u>, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in <u>Ashcroft</u> v. <u>Iqbal</u>.").  While <u>Colon</u> permitted supervisory liability in situations where the supervisor knew of and acquiesced in a constitutional violation committed by a

subordinate, these post-Iqbal district court decisions reason that Iqbal's "active conduct" standard imposes liability only where that supervisor directly participated in the alleged violation or had a hand in creating a policy or custom under which the unconstitutional practices occurred.

These decisions may overstate Iqbal's impact on supervisory liability.  Iqbal involved alleged intentional discrimination.  Ashcroft v. Iqbal, 129 S. Ct. at 1942.  The Supreme Court specifically held that "[t]he factors necessary to establish a Bivens violation will vary with the constitutional provision at issue."  Ashcroft v. Iqbal, 129 S. Ct. at 1948.  Where the alleged constitutional violation involved "invidious discrimination in contravention of the First and Fifth Amendments," Iqbal held that "plaintiff must plead and prove that the defendant acted with discriminatory purpose," whether the defendant is a subordinate or a supervisor.  Ashcroft v. Iqbal, 129 S. Ct. at 1948-49.  It was with intent-based constitutional claims in mind, specifically racial discrimination, that the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution." Ashcroft v. Iqbal, 129 S. Ct. at 1949.  Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in Colon v. Coughlin may still apply.[16]

---

[16]    See, e.g., Chao v. Ballista, 630 F. Supp. 2d 170, 178 n.2 (D. Mass. July 1, 2009) (noting that the "state of mind required to make out a supervisory claim under the Eighth Amendment – i.e., deliberate indifference – requires less than the discriminatory purpose or intent that Iqbal was required to allege in his suit. . . ."); Michael Avery et al., Police Misconduct: Law (continued...)

B.      **Discussion**

Regardless of whether <u>Colon</u> or an <u>Iqbal</u>-limited standard applies, supervisory defendants Blackford and Merrigan are entitled to summary judgment.

It is undisputed that defendant Blackford was not present at Sash's arrest, nor is there any evidence that he directed the use of excessive physical force against Sash.  (<u>See</u> pages 5-6 above.) Similarly, although defendant Merrigan was present at the scene of the arrest, Sash does not contend that Merrigan ever laid a hand on him, nor does he contend that Merrigan ordered the Mulcahys to use excessive physical force.  (<u>See</u> pages 5-6 above.)

To the extent Sash argues that Blackford and Merrigan are liable on a theory of bystander liability,[17/] he offers no supporting evidence.  Sash presents no evidence that Blackford was present at the scene, was aware the Mulcahys were going to use excessive force, or that Blackford

---

[16/]    (...continued)
& Litigation § 4:5 (2009) (discussing the impact of <u>Ashcroft</u> v. <u>Iqbal</u> on issue of supervisor liability in section 1983 and <u>Bivens</u> actions).

[17/]    "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official."  <u>Anderson</u> v. <u>Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted); <u>see also</u>, <u>e.g.</u>, <u>Curley</u> v. <u>Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001) ("[W]e recognize that law enforcement officials have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence."); <u>Thompson</u> v. <u>Tracy</u>, 00 Civ. 8360, 2008 WL 190449 at *6 (S.D.N.Y. Jan. 17, 2008) (recognizing a police officer's affirmative duty to protect a citizen's constitutional rights from infringement by other officers in their presence).

had "a realistic opportunity to intervene to prevent the harm from occurring." <u>Anderson</u> v. <u>Branen</u>, 17 F.3d at 557 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").[18/]

The claim that defendant Merrigan is liable for failing to intervene at the scene is also without merit. According to Sash's own evidence, the Mulchays rushed up to him, tackled him to the ground where he was held for five seconds, and then threw him against a metal wall, and the entire incident took less than thirty seconds. (See pages 5-6 above.) No reasonable jury could conclude that defendant Merrigan had a genuine opportunity to intercede. See, e.g., O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988) (Police officer was not liable for the use of excessive force by another officer who punched a prisoner in the face three times in rapid succession, because it "was not an episode of sufficient duration to support a conclusion that [he] . . . became a tacit collaborator."); Johnson v. City of N.Y., 05 Civ. 7519, 2008 WL 4450270 at *6 (S.D.N.Y. Sept. 29, 2008) (Grants summary judgment for police officers who were accused of failing to prevent the use of excessive force where the alleged force lasted only a couple of seconds.); Jean-Laurent v. Wilkerson, 438 F. Supp. 2d 318, 327 (S.D.N.Y. 2006) (Dismisses claims against defendant police

---

[18/]    Accord, e.g., Thompson v. Tracy, 2008 WL 190449 at *6; see also, e.g., Smith v. P.O. Canine Dog Chas, 02 Civ. 6240, 2004 WL 2202564 at *10 (S.D.N.Y. Sept. 28, 2004) (defendant officers were entitled to summary judgment on excessive force claims based on their failure to intercede because there was "no evidence to suggest that these officers were [present] . . . at the time of the incident. . . . Nor is there any indication that any of the named defendants would have known, or had reason to believe, that the alleged violation of constitutional rights was occurring.") (citing cases).

officers where another officer slammed plaintiff's head into a wall because the dismissed defendants "did not have a reasonable opportunity to intervene in such a rapid series of events.").

Although Sash contends that Blackford and Merrigan should be liable based on their failure to provide necessary and proper training to the Mulcahys, or alternatively, on their failure to implement a policy that would have prevented the use of excessive force, there is no evidence to support these claims. Sash has presented no evidence concerning officer training in any regard: there is no indication that either Blackford or Merrigan were responsible for training the Mulcahys; that either of them failed in that responsibility; that the Mulcahys lacked training; or that the Mulchahys lack of training led to the use of excessive force. Similarly, to the extant Sash alleges that Blackford and Merrigan are liable for failing to create or maintain a policy that would have prevented the use of excessive force, there is no evidence supporting this claim. Sash makes reference to a 162-page United States Probation Department manual, but does not indicate how the existence or absence of any particular policy might have caused or prevented the alleged use of force. (Dkt. No. 32: Sash Letter Br. at 4.) Nor does Sash present evidence concerning whether Blackford or Merrigan were responsible for the creation and maintenance of any policy. Instead, he asserts that Blackford lacked familiarity with the manual's contents. (Sash Letter Br. at 4.) Similarly, Sash points out that Merrigan failed to create an arrest report within twenty-four hours of the arrest, in contravention of Probation Department rules, but does not indicate how that bears on the alleged use of excessive force. (Id.)

To survive a motion for summary judgment, Sash cannot just echo the legal standard for supervisory liability, bur rather must submit evidence, and he has failed to do so.  See, e.g., Cicio v. Graham, No. 08-CV-534, 2009 WL 537534 at *7 (N.D.N.Y. Mar. 3, 2009) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); Hallock v. Bonner, 567 F. Supp. 2d 334, 339 (N.D.N.Y. 2008) (granting summary judgment for federal customs officials where the record was "devoid of any evidentiary support" that they created a relevant custom or policy, or acted negligently in their supervisory roles), aff'd 2009 WL 2476694 (2d Cir. Aug. 14, 2009).[19]

---

[19]    See also, e.g., Santiago v. City of N.Y., 98 Civ. 6543, 2000 WL 1532950 at *7 (S.D.N.Y. Oct. 17, 2000) (granting summary judgment where there was no evidence that supervisor created a custom or policy under which the alleged constitutional violation occurred); Reid v. Artuz, 984 F. Supp. 191, 195 (S.D.N.Y. 1997) (dismissing a prisoner's section 1983 claim against a supervisory official when the pleadings failed to establish "any factual basis upon which a fact finder could reasonably conclude personal involvement by the supervisory official defendant. . . . that [defendant] created or continued a policy or custom which allowed the violation to occur, or that [defendant] was grossly negligent in managing the subordinates who caused the unlawful condition."); Pravda v. City of Albany, 956 F. Supp. 174, 182 (N.D.N.Y. 1997) (granting summary judgment for supervisory officers in excessive force case because "Plaintiff [did] not allege any facts from which the Court could reasonably infer that Defendants . . . partipated in [the] alleged mistreatment, were present when it allegedly occured, knew about it, or were grossly negligent in any way."); Show v. Patterson, 955 F. Supp. 182, 188 (S.D.N.Y. 1997) (dismissing case against supervisory defendants where plaintiffs failed to submit evidence indicating that supervisory defendants created or were aware of a policy of violating prisoners' rights by using excessive force, and because the complaint was  devoid of any allegations that the defendants were negligent in supervising subordinates).

29

Accordingly, defendants' motion for summary judgment of the excessive force claims against Blackford and Merrigan is granted.

## CONCLUSION

For the reasons set forth above, defendants' summary judgment motion (Dkt. No. 23) as to the excessive force claims against supervisory officers Blackford and Merrigan is GRANTED and the summary judgment motion as to the excessive force claims against Officers Dave and Kevin Mulcahy is DENIED.[20]

SO ORDERED.

DATED:      New York, New York
            December 15, 2009

Andrew J. Peck
United States Magistrate Judge

Copies to:   Eliot S. Sash
             A.U.S.A. David Bober

---

[20]     If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, plaintiff should request copies from defense counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

C:\OPIN\SASH